IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

DEBBIE JO WARREN,

        Plaintiff,          2:10-cv-3102-SU

    v.          OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

SULLIVAN, Magistrate Judge:

    Debbie Jo Warren ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act. For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for proper evaluation and documentation of plaintiff's mental impairments and their effect on plaintiff's claim of disability.

**PROCEDURAL BACKGROUND**

1 - OPINION AND ORDER

On March 4, 2007, plaintiff protectively filed an application for DIB. Transcript of Record of Proceedings ("Tr.") 85-94. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 57-69. On August 4, 2009, an ALJ hearing was held before the Honorable John J. Madden, Jr. Tr. 26-54. On August 19, 2009, ALJ Madden issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 9-20. After the Appeals Council declined to review the ALJ decision on August 5, 2010, plaintiff filed a complaint in this Court. Tr. 1-5.

## FACTUAL BACKGROUND

Born on July 7, 1962, plaintiff was 40 years old on the alleged onset date of disability and 47 years old at the time of the hearing. Tr. 30, 82. Plaintiff graduated from high school and held various jobs until sustaining a work-related injury in 2007. Tr. 31, 39. Following her injury, plaintiff began attending Abdill Career College. Tr. 31. Plaintiff participated in the Certified Nursing Assistant program for approximately three months before she was asked to leave for "snapping at a teacher." Tr. 31-32. Plaintiff then took a volunteer training position at the Grants Pass Health Department, pursuant to a Worker's Compensation vocational rehabilitation assistance program, but she soon left that position, citing medical issues. Tr. 32. Plaintiff also attempted to enter other vocational rehabilitation assistance programs which were unsuccessful because of plaintiff's "medications, mental situation, or limitations." Tr. 34. Plaintiff has past relevant work experience as a caregiver in medical services and an assistant administrator/office clerk. Tr. 46. She alleges disability beginning June 30, 2002, due to a work-related back injury resulting in

degenerative disc disease of the lumbar spine and of the thoracic and cervical spine, as well as

chronic pain, anxiety, depression, and bipolar disorder. Tr. 16, 35-38.

A vocational expert ("VE") testified at the hearing. Tr.46-54. The VE opined that there were light exertion, unskilled jobs available in the local economy which plaintiff could perform based on the descriptions set forth in the *Dictionary of Occupational Titles* ("DOT"). Tr. 50. However, the VE testified that jobs would not be available to applicants who - like plaintiff - needed to lie down throughout the day outside of the normal range of breaks. Tr. 53. The VE also conceded that maintaining a job would be "problematic" for a worker who displayed dramatic mood swings and who would require frequent absences from work due to agoraphobic or panic disorder episodes. Tr. 53-54.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must consider the record as a whole, weighing "both the evidence that supports and detracts" from the Commissioner's conclusions. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986); *see also Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d at1486. To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; *see* 20 C.F.R. §§ 404.1520(c), 416.90(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

In step three, the Commissioner determines whether the impairment "meets or equals one of a number of listed impairments" that the Commissioner acknowledges are "so severe as to preclude substantial gainful activity." *Id.*; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Id.*; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

In step five, the Commissioner must establish that the claimant can perform other work. *Id.*

at 142; *see* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

I. The ALJ's Findings

First, the ALJ found that plaintiff last met the insured status requirements of the Act on December 31, 2007. Tr. 14, Finding 1. At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date of June 20, 2002, through the date last insured of December 31, 2007. Tr. 14, Finding 2. At step two, the ALJ found that plaintiff had the following severe impairments: lumbar spine degenerative disc disease and thoracic and cervical spine degenerative disc disease. Tr. 14, Finding 3. Plaintiff disputes this finding. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 14-15, Finding 4. Plaintiff disputes this finding.

As a result of finding that plaintiff did not establish disability at step three, the ALJ continued the evaluation process to determine how plaintiff's medical impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. 404.1567(b), with only occasional climbing of ladders, ropes, and scaffolds, and occasional stooping and crouching. Tr. 15, Finding 5. In formulating plaintiff's RFC, the ALJ gave considerable weight to the State's medical consultants, who found plaintiff's allegations regarding her level of pain and mobility to be only partially credible. Tr. 18-19. In addition, the ALJ found that any alleged mental impairments experienced by plaintiff through

the date last insured were non-severe. Tr. 19. Plaintiff disputes her RFC assessment and the ALJ's findings therefrom.

At step four, the ALJ decided that plaintiff was able to perform her past relevant work, specifically that of an assistant administrator/general office clerk. Tr. 19, Finding 6. The ALJ found that plaintiff's past relevant work did not require the performance of work-related activities precluded by her RFC. Tr. 19, Finding 6. Plaintiff disputes this finding.

Finally, because the ALJ found plaintiff not disabled at step four, he did not make a finding at step five. 20 C.F.R. §§ 404.1520(a)(4), 419.920(a)(4) ("If we find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Based on the above findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act at any time between the alleged onset date and the date last insured and, accordingly, was not entitled to Social Security benefits. Tr. 20, Finding 7.

## II. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ erred in the following ways: (1) by giving "considerable weight" to the opinion of Dr. Weinman, who did not address plaintiff's mental disorders nor the combined impact of her physical and mental disorders, in preference over the opinions of plaintiff's treating physicians, Pl.'s Br. 20-21; (2) by failing to give proper weight to physicians' opinions and thereby failing to find severe mental impairments, Pl.'s Br. 22; (3) by failing to properly evaluate plaintiff's reported symptoms and Dr. Purtzer's medical reports, including the impact of her mental disorders, both alone and in combination with her chronic physical pain syndrome, Pl.'s Br. 22-23; (4) by assigning greater weight to the opinions of nonexamining physicians than to the opinions of treating physicians, Pl.'s Br. 23; (5) by discrediting the credibility of plaintiff's testimony regarding

the severity of her physical and mental disorders, without making specific findings with clear and convincing reasons, Pl.'s Br. 23-26; (6) by finding plaintiff's mental impairments non-severe through her date last insured, Pl.'s Br. 26-28; and (7) by basing his opinion at Step Four on the vocational expert's testimony concerning an individual which did not reflect the full extent of plaintiff's impairments, including her mental disorders, Pl.'s Br. 28-29. In so alleging these errors, plaintiff disputes the ALJ's findings at each step of the disability determination process except the first.

A.  Step Two Findings

Plaintiff asserts that the ALJ failed to include her depression and anxiety, as well as her bipolar disorder, as severe impairments at step two of the five-step sequential process. *See* Pl's Br. 18. Plaintiff contends that these mental impairments severely impaired her ability to function, beginning long before her date last insured. *Id.* at 17. Plaintiff maintains that she has difficulty concentrating and controlling her emotions and she is afraid to go out in public. *Id.* at 18.

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. §§ 404.1520(a); 416.920(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a). The step two inquiry is a "threshold inquiry." *Yuckert*, 482 U.S. at 153. As such, "[o]missions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

The "effect of this harmless error doctrine is tempered by additional requirements," however,

when a claimant asserts disability due to mental impairments. *Id.* In that case, the ALJ is required to "'document application of the [Psychiatric Review Technique] in the decision.'" *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (quoting 20 C.F.R. § 404.1520a(e)); *see also Dykstra v. Barnhart*, 94 Fed.Appx. 449, 450 (9th Cir. 2004). This technique is reflected in a Psychiatric Review Technique Form ("PRTF"), wherein the reviewer must: 1) "determine whether an applicant has a medically determinable mental impairment"; 2) "rate the degree of functional limitation for four functional areas"; and 3) "determine the severity of the mental impairment (in part based on the degree of functional limitation)." *Keyser*, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a). The four functional areas are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Accordingly, the ALJ's written opinion must "incorporate the pertinent findings and conclusions based on the technique" and "include a specific finding as to the degree of limitation in each of the functional areas." *Keyser*, 648 F.3d at 725 (citations and internal quotations omitted).

Failure to document the application of the technique in the opinion "requires reversal if the plaintiff had a 'colorable claim of a mental impairment.'" *Dykstra*, 94 Fed.Appx. at 450 (citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir.2000) (construing an earlier version of section 1520a)); *see also Keyser*, 648 F.3d at 726. A colorable claim "is one which is not 'wholly insubstantial, immaterial, or frivolous.'" *Dykstra*, 94 Fed.Appx. at 450 (quoting *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 981 (9th Cir. 2002)); *see also Keyser*, 648 F.3d at 726-7.

Here, the ALJ did not follow the proper procedure; specifically, the ALJ failed to include pertinent findings and conclusions based on the psychiatric review technique which were supported by substantial evidence in the record. Rather, the ALJ stated that plaintiff's depression and anxiety

were non-severe because she "has no history of decompensating or hospitalization" and she "ceased substantial gainful activity secondary to her physical complaints, not her psychological complaints." Tr. 19. The ALJ then summarized limited portions of the record, but without any analysis, before concluding that he gave "considerable weight" to the findings of the State psychiatric medical consultants (Drs. Hennings and Rethinger), who concluded that plaintiff's depression was nonsevere through the date last insured. *Id.* The determinations made by Drs. Hennings and Rethinger contradict the medical opinions of plaintiff's treating physicians and their years of medical records, as well as the testimony of plaintiff and her husband. The ALJ does not explain why he chooses to ignore that evidence in favor of the reviewing medical consultants. Although the ALJ gives a cursory acknowledgment of the technique in supporting the findings of the State psychiatric medical consultants, he merely states the consultants' conclusions (which constitute check marks on the Psychiatric Review Technique worksheet) without conducting his own analysis supported by substantial evidence in the record. This is inadequate for the purposes of section 404.1520a. *See Keyser*, 648 F.3d at 726 ("the written decision did not document the ALJ's application of the technique and did not include a specific finding as to the degree of limitation in any of the four functional areas . . . this is insufficient to meet the requirements of 20 C.F.R. § 404.1520a(e)").

Further, pursuant to this analysis, the ALJ mis-characterized the record. For instance, the ALJ stated that "the claimant mentioned possible depression to some treating sources." The record, in fact, is replete with plaintiff's repeated complaints of depression to each of her treating physicians. *See, e.g.,* Tr. 386, 425, 439, 443. The ALJ emphasized that, "based upon her 'intact' activities of daily living, Dr. Hennings concluded that the claimant's main issue is physical and that it appears that she attributes the psychological deficits to her physical impairments." Tr. 19.

9 - OPINION AND ORDER

However,

plaintiff specifically told the ALJ that "the mental was worse and then the pain just made it more intense." Tr. 35.

The ALJ noted that plaintiff reported depression and acknowledged her use of anti-anxiety medications but relied exclusively on the findings of the psychiatric medical consultants, who checked the boxes on the Psychiatric Review Technique worksheet to indicate that plaintiff had "no restrictions on activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation." Tr. 19. The record, however, reveals the contrary. Plaintiff reported to her treating physician on multiple occasions that she was emotional, "crying every day," anxious, and depressed. Tr. 386, 425, 439, 443. Plaintiff has a history of taking anti-depressant and anti-anxiety medication, *see* Tr. 425, 443, but still reports an inability to follow conversations, trouble concentrating, and a tendency to "get upset because [she] can't think." Tr. 37. Plaintiff's attempts to re-enter the workforce after her injury were unsuccessful due to her "mental situation," Tr. 34, and she was expelled from her educational training program for "snapping at a teacher." Tr. 31-32. As a result of her anxiety, she reports hiding in a closet and sitting in the bathroom for hours because she feels afraid to come out; she suffers panic attacks and "swinging emotions" that cause her to scream and yell at her family members. Tr. 40-41.

The statements by plaintiff's husband regarding the impact of plaintiff's mental condition are congruous with plaintiff's testimony. Tr. 44-46 (plaintiff experiences almost hourly mood swings, "lots of crying," and confusion in conversations). In addition, plaintiff's treating physicians

often noted plaintiff's distressed mental state. *See, e.g.,* Tr. 273 (plaintiff appears "despondent" and displays "quite a bit of anxiety"). Therefore, even if the ALJ properly discredited plaintiff's testimony, the third-party statements, and the medical evidence, his summation of plaintiff's mental state was nonetheless an inaccurate representation of the record.

More recent evidence indicates that plaintiff's depression and anxiety has remained constant and continued throughout the time of her hearing in 2009; one such example is Dr. Fine's neuropsychological evaluation, which occurred shortly after plaintiff's date last insured on January 16, 2008. Tr. 547. Based on clinical observations, a comprehensive medical and mental history, and a mental status exam, Dr. Fine diagnosed plaintiff with bipolar disorder, in addition to depressed mood, chronic pain syndrome, cannabis dependence, panic disorder with agoraphobia, and PTSD. Tr. 549. In follow-up visits, Dr. Fine noted plaintiff's "severe" depression, anxiety, and hopelessness. Tr. 550-51. Additional evidence from the record supports Dr. Fine's assessment, including records from plaintiff's treating physicians, Dr. Purtzer (who diagnosed plaintiff with anxiety and depression in early 2006; Dr. Purtzer began prescribing anti-anxiety and anti-depressant medication, following plaintiff's repeated reports of depression, anxiety, and inability to control her emotions, Tr. 425-28) and Dr. Thompson (who also diagnosed plaintiff with bipolar disorder and noted that "[h]er depression has been persistent since her back injury in 2003," Tr. 54).

Furthermore, at no point in his decision did the ALJ discuss plaintiff's bipolar disorder and its impact on plaintiff's ability to perform basic work activities. Although plaintiff's first official diagnosis of bipolar disorder occurred two weeks after plaintiff's date last insured, Tr. 549, the existence of the diagnoses so close in time to plaintiff's date last insured allows a reasonable inference that the onset of the bipolar disorder occurred prior to the date of the first diagnosis. *See*

11 - OPINION AND ORDER

*Armstrong v. Commissioner*, 160 F.3d 587, 589-90 (9th Cir. 1998) ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination"). Indeed, plaintiff's testimony, the testimony of her husband, and plaintiff's medical records at least raise an inference that plaintiff struggled with bipolar disorder, in addition to depression and anxiety, during the insured period. Rather than merely ignoring plaintiff's evidence of bipolar disorder and its impact on her ability to work, the ALJ had a duty to develop the record fully and fairly to ensure that her interests were considered, including, if necessary, calling on the services of a medical adviser to assist in inferring the onset date of plaintiff's bipolar disorder. SSR 83-20; *Armstrong*, 160 F.3d 587, 589 ("At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred").

      Thus, the ALJ's failure to follow 20 C.F.R. § 404.1520a(e) was not harmless because plaintiff demonstrated a colorable claim of mental impairment. *See Keyser*, 648 F.3d at 726-7 (colorable claim of mental impairment existed where claimant had a GAF score of 55 to 65, which indicated moderate symptoms, and where third-party statements indicated that the claimant's mental impairments adversely impacted her ability to maintain employment). The ALJ's failure to properly analyze plaintiff's mental impairments at step two may have also resulted in errors at subsequent steps of the disability analysis. *See* 20 C.F.R. § 404.1520 (listing five-step evaluation process). The ALJ's analysis of plaintiff's mental impairments also implicated plaintiff's credibility determination ("Furthermore, she ceased substantial gainful activity secondary to her physical complaints, not her psychological complaints, and repeatedly reported to her attending physician that she was not working for reasons unrelated to her impairments"). Tr. 19.

Accordingly, this Court is unable to address plaintiff's other allegations of error, as they each substantially involve allegations regarding plaintiff's mental impairments and primarily address how the ALJ's failure to consider plaintiff's mental impairments at step two adversely effected the RFC determination and step five of the sequential process.  Therefore, on remand, the ALJ must evaluate plaintiff''s mental impairment using the procedures set out at 20 C.F.R. § 1520a and must perform the subsequent steps of the analytical process in light of the new evaluation, including calling on a medical consultant to assist in inferring the onset date of plaintiff's bipolar disorder.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for proper evaluation and documentation of plaintiff's mental impairments and their effect on plaintiff's claim of disability.  A judgment should be prepared accordingly.

IT IS SO ORDERED.

DATED this 13th day of March, 2012.

                                         /s/ Patricia Sullivan
                                               Patricia Sullivan
                                           United States Magistrate Judge